UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GILBERT BELL,<br><br>                                  Petitioner,<br>vs.<br>ROBERT HERNANDEZ, Warden,<br><br>                                  Respondent. | CASE NO. 05cv1095-LAB (JMA)<br><br>**ORDER ADOPTING REPORT AND RECOMMENDATION, AND DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

**I.     Procedural and Factual Background**

On April 28, 2005, Petitioner Gilbert Bell's Petition for writ of habeas corpus, challenging a decision by California Gov. Arnold Schwarzenegger reversing a parole board's decision finding him suitable for parole. On May 23, 2005, the Petition was transferred to this Court from the Central District of California. Petitioner is represented by counsel.

In 1979 Petitioner shot and killed his common-law wife and pushed her body from the car. Petitioner had an extensive prior criminal record, including violent offenses. He pled guilty to second degree murder and was sentenced to a term of 15 years to life. Petitioner is presently incarcerated at the Richard J. Donovan Correctional Facility in San Diego. At parole hearings from 1989 to 2002, the Board of Prison Terms ("BPT") panel found him unsuitable for parole. In 2003, the panel found him suitable, set the term and conditions of his parole. Under Cal. Penal Code § 3041.2, the decision was reviewed by Gov. Schwarzenegger, who reversed it. The Governor's office issued a letter, accompanied by written findings signed by Gov. Schwarzenegger, identified as the Indeterminate

1  Sentence Parole Release Review ("Governor's Review"). Following denial of habeas in state court
2  proceedings, Petitioner filed the instant Petition.

3        This matter was referred to Magistrate Judge Jan M. Adler for report and recommendation
4  pursuant to 28 U.S.C. § 636. Following the filing of an answer and traverse, Judge Adler issued his
5  report and recommendation (the "R&R") on February 28, 2006, recommending that the Petition be
6  denied with prejudice and judgment entered accordingly. Petitioner filed written objections to the
7  R&R.

8        A district court has jurisdiction to review a Magistrate Judge's report and recommendation
9  concerning a dispositive pretrial motion. Fed. R. Civ. P. 72(b). "The district judge to whom the case
10 is assigned shall make a *de novo* determination upon the record, or after additional evidence, of any
11 portion of the magistrate judge's disposition to which specific written objection has been made in
12 accordance with this rule." *Id.*; *see also* 28 U.S.C. § 636(b)(1)(C). "A judge of the court may accept,
13 reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."
14 28 U.S.C. § 636(b)(1)(C). Thus, this Court must review those parts of the report and recommendation
15 to which a party has filed a written objection.

16 **II.**    **Petitioner's Arguments**
17     **A.**    **Petition**

18       The Petition objects to the Governor's decision because, it contends, the decision was drafted
19 by others and "[s]igned by the Governor or his designated agent without the Governor's personal
20 review of all, or any of the materials reviewed by the BPT panel that granted parole . . . ." (Petition
21 at 9:27–10:1.) The Petition cites authority, including *In re Rosenkrantz*, for the principle that the BPT
22 is required to consider "all relevant, reliable information available to the panel." 80 Cal.App.4th 409,
23 424–27 (2000) (disapproved on other grounds by *In re Rosenkrantz*, 29 Cal.4th 616 (2002)) (citing
24 Cal. Code Regs., tit. 15, § 2402(b)). The Petition also cites authority including *In re Arafiles*, for the
25 principle that "[t]he Governor may only affirm, modify, or reverse the decision of the parole authority
26 on the basis of the same factors which the parole authority is required to consider." 6 Cal.App.4th
27 1467, 1474 (Cal.App.3.Dist. 1992) (citing California Constitution, Art. 5, § 8(b).) The Petition alleges
28 that the Governor "did not personally review petitioner's case as required by law. . . ."

1    The Petition also takes issue with the bases on which the Governor's signed statement says he reversed the BPT panel's decision, and contends this violated Petitioner's due process rights. The Petition takes issue with the Governor's citation to Petitioner's "startling record of violence;" the fact that the commitment offense occurred while Petitioner was on parole; Petitioner's history of dealing with alcohol and drug abuse problems; Petitioner's history of personality disorders; the Governor's suspicion that Petitioner's expressions of remorse were insincere; and the viciousness of the murder and the triviality of Petitioner's motive in committing it.

The Petition contends the Governor should not have relied on the murder as a basis to continue denying Petitioner parole without "articulating a rational nexus between the offense factors recited and Petitioner's current parole risk, if any." The Petition contends this was a denial of Petitioner's due process rights.

The Petition argues that the Governor's reversal violated his due process rights because the Governor's discretion to deny parole repeatedly or interminably is necessarily limited. Therefore, it suggests, the characterization of Petitioner's offense as serious is an inadequate basis on which to deny parole.

The Petition further alleges Gov. Schwarzenegger reversed nearly all grants of parole by the BPT in second degree murder cases using "verbatim identical grounds to reverse parole grants. . . ." (Petition at 21:13–14.) The Petition contends this showed Petitioner was denied the "individual[ized] consideration" required under *Rosenkrantz*, 29 Cal.4th at 677.

**B.    Objections**

Petitioner's objections are not enumerated, but rather are set forth in the form of a general argument against the R&R. In essence, they boil down to the following general contentions:

1. The R&R does not address Petitioner's habeas or Constitutional claims.

2. The R&R should have granted the Petition because the Governor's decision violated state law in various ways.

3. The R&R unduly rubber-stamps the Governor's findings and the rulings of California state courts.

///

1       4. The R&R errs by not requiring California state courts to follow *Biggs v. Terhune*, 334 F.3d 910 (9th Cir. 2003).

Petitioner makes a number of additional generalized objections, charging that the R&R "wholly ignores the evidence and the governing Supreme Court, Ninth Circuit, State, and constitutional authorities on which the claims are founded," (Obj. at 3:15–17) and other similarly generalized objections. Because Fed. R. Civ. P. 72(b) requires the Court only to conduct a *de novo* review of portions of the R&R to which *specific* written objections are received, the Court will not conduct a full *de novo* review on the basis of broad and nonspecific objections.

## III. Discussion

### A. Whether the R&R Erred by Not Addressing Petitioner's Habeas or Constitutional Claims

In this case, Petitioner's only habeas claims are his federal Constitutional claims; he has not argued that he is in custody in violation of laws or treaties of the United States. *See* 28 U.S.C. § 2254(a).

The Court has reviewed the R&R and notes that, contrary to Petitioner's objections, it addressed Petitioner's Constitutional habeas claims at length and in detail. (*See* R&R at 7:4–13:20.) To an extent, it appears Petitioner is objecting to the recommended outcome generally. As noted, the Court will conduct a *de novo* review only of the portions of the R&R to which Petitioner has filed *specific* written objections. Petitioner does, however, specifically object that the R&R should have reached the Constitutional question and recommended that he be granted relief because the California state courts did not comply with the requirements of the Ninth Circuit's ruling in *Biggs v. Terhune*. This argument is addressed below.

### B. Whether the Petition Should Be Granted Because Gov. Schwarzenegger Violated State Law

The R&R correctly notes that mere errors of state law are not cognizable in federal habeas corpus proceedings. 28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 68 (1991);*Pulley v. Harris*, 465 U.S. 37, 41 (1984) ("A federal court may not issue the writ [of habeas corpus] on the basis of a perceived error of state law.")

1   Furthermore, Petitioner cites no apposite authority showing that Gov. Schwarzenegger did
2   violate state law in any respect. While the Governor must consider the same factors as relied on by
3   the BPT, nothing Petitioner cites suggests the Governor must personally review all the evidence the
4   BPT considered. Nor does the California state authority Petitioner cites purport to require the
5   Governor to personally deal with the parole review process in such detail as Petitioner's pleadings
6   suggest, rather than relying on assistants to brief him and draft documents for him.

7   Petitioner's claims that the Governor's Review uses language identical to that found in other
8   similar Indeterminate Sentence Parole Release Reviews, or in reports prepared by the BPT, or that the
9   Governor's Review was prepared on a template do not suggest a violation of either state law or due
10  process. Petitioner's implication that the Governor blindly and arbitrarily denies parole in all similar
11  cases without regard for the facts of such cases is belied by Petitioner's own figures, showing that the
12  Governor sometimes granted parole in these cases. (Petition at 21:17–18.) Furthermore, the Court
13  has reviewed the Governor's Review and notes that it includes a large amount of detail specifically
14  relating to Petitioner's case. This demonstrates that the Governor did give Petitioner's case
15  individualized consideration.

16  The record suggests that California courts are unwilling to find fault with the Governor's
17  method of review even if all he does is to review, approve, and sign the Governor's Review. (*See, e.g.*,
18  Petition, Ex. G at 3:9–15 (copy of decision of Superior Court's decision).) Petitioner likewise cites
19  no authority showing that this procedure falls short of federal due process requirements.

20  **C.    Whether the R&R Unduly Deferred to Decisions of the Governor and State Courts**
21

22  Because this petition was filed after April 24, 1996, it is governed by the Antiterrorism and
23  Effective Death Penalty Act of 1996 (AEDPA). Specifically, 28 U.S.C. § 2254(e)(1) requires the
24  Court to presume in this case that determinations of factual issues made by state courts are correct.
25  Under this same section, Petitioner bears the burden of rebutting the presumption of correctness by
26  clear and convincing evidence.
27  / / /
28  / / /

Under § 2254(d), the Court is authorized to grant the writ only if the state court's adjudication of the claim

> resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or . . . resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

An "unreasonable application" of the law is different from an incorrect application. *Williams (Terry) v. Taylor*, 529 U.S. 362, 410 (2000). The Court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411.

Petitioner specifically objects to the R&R's application of the "some evidence" standard. Petitioner argues that the correct standard requires that the Governor's findings must be supported by the evidence, "relevant to the pivotal question of petitioner's current parole suitability," and "compliant with the State's parole determination scheme." (Obj. at 1:26–28.) Petitioner argues that application of the "some evidence" standard (*i.e.*, the Governor's decision must be supported by some evidence in the record) is erroneous because "any evidence whatsoever that a murder was committed is sufficient to forever preclude parole, effectively converting all of the State's indeterminate prison terms to life with no possibility of parole." (Obj. at 1:28–2:2.)

The Ninth Circuit, however, has explained that the correct standard for reviewing a parole decision is the "some evidence" standard. *Sass v. California Bd. of Prison Terms*, 461 F.3d 1123, 1129 (9th Cir. 2006). This standard is therefore not unduly deferential to the Governor's findings or to state courts. "To determine whether the some evidence standard is met does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the [decision-maker's] conclusion . . . ." *Id.* at 1128 (internal quotation marks and citations omitted).

Petitioner attempts to make his case by pointing to all the evidence in his favor, and suggesting that the evidence relied on by the Governor is out of date, inapplicable, or otherwise unpersuasive. The Court may not, however, re-weigh the evidence and decide the Petition on the basis of its own

1 conclusion regarding whether Petitioner is suitable for parole. The Court's function, as discussed
2 above, is to determine whether the Governor's decision was supported by some evidence in the record.

3       Although Petitioner asserts the Governor's decision was not supported by any evidence, a
4 review of his own pleadings demonstrates otherwise. Petitioner was incarcerated for this offense
5 beginning in 1980. He selects as the relevant reference date his sixth year of imprisonment,
6 contending that since 1986 he has "established an exemplary record of reform and rehabilitation."
7 (Petition at 3:8–10.) However, Petitioner admits that during his first six years of incarceration, he
8 "continued his gang and roughhouse behavior, accumulating seven disciplinary violations." (*Id.* at
9 3:10–11.)

10       Furthermore, Petitioner's assertions of a "spotless, exemplary" record after 1986 (Petition at
11 19:26–27) are undercut somewhat by his own repeated discussion of more recent developments, *e.g.*,
12 personality and substance abuse problems continuing apparently as late as 1993 and 1995, respectively.
13 (Petition at 13:19–24 (contending that the Governor relied on old, outdated psychological evaluations,
14 but citing a 1994 evaluation in which the forensic psychologist concluded Petitioner's Mild Antisocial
15 Personality Disorder was "almost no longer considered a personality disorder"); 13:5–11 (stating that
16 Petitioner has now overcome his substance addictions for a period of 13 years).) This bears out the
17 Governor's conclusion that Petitioner "did not begin working to overcome his additions until 1991"
18 and that "his therapy did not begin until the early 1990's." (Petition, Ex. B at 3 (Governor's Review.)

19       The Governor stated that during Petitioner's first ten years in prison, he "failed to embrace any
20 of the positive opportunities he had. . . ." (Petition, Ex. B at 3.) He did note that Petitioner had made
21 some "noteworthy gains while in prison," but concluded that the severity of the commitment offense,
22 his previous record of violence, and his "late start in addressing his anti-social personality disorder"
23 outweighed any mitigating factors. *Id.*

24       The Governor also cited a good deal of other facts not mentioned by Petitioner. While
25 Petitioner contests the Governor's analysis and conclusions, he has not provided any evidence to show
26 the basic information is untrue, nor does he contest its essential accuracy. The Governor's Review
27 describes several pertinent details of the murder of Petitioner's common law wife; Petitioner's social
28 and violent criminal history before the murder; and his criminal violence even in prison, including

the stabbing of another inmate in the back in 1984. (Petition, Ex. B at 2–4.) The Governor's Review notes that between 1986 and 1990, Petitioner had to be counseled for other misconduct. (*Id.* at 3) The Governor attached significance to the fact that Petitioner had made professions of remorse early in his incarceration, at a time when it was clear he did not appreciate the gravity of his offense, leading the Governor to question Petitioner's sincerity. (*Id.*) The Governor's Review also notes the seriousness and dangerousness of Petitioner's personality disorder, noting that it was associated with uncontrollable and murderous anger, the view that his common-law wife was his "property," and the belief that he was "invincible." (*Id.*)

While the Governor acknowledged Petitioner's progress in overcoming his substance abuse, personality problems, and violent behavior, and describes Petitioner's behavior in recent years as commendable, he nevertheless "question[s] whether those gains are yet adequately established." In other words, the Governor's Review does not forever preclude parole, but concludes Petitioner may still pose a danger to the public at this point.

Petitioner has provided the Court no reason to question any of this information, and, as noted, his own pleadings bear it out in part. While another decision-maker might decide this issue differently than the Governor did, the Court concludes the Governor's decision was supported by "some evidence." The R&R correctly applied the "some evidence" standard. This Court applies the same standard, and concludes the Governor's decision was supported by some evidence.

**D. Whether State Courts' Failure to Follow *Biggs. v. Terhune* Requires Granting the Writ**

Because Petitioner's claims were adjudicated in state court, this Court may not issue a writ of habeas corpus on the basis of an error of law unless the state courts' adjudication of his claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States . . . ." 28 U.S.C. § 2254(d)(1). *Biggs v. Terhune*, 334 F.3d 910 (9th Cir. 2003), the case Petitioner urges in his Objections as the basis for the grant of his petition, was decided by the U.S. Court of Appeals for the Ninth Circuit, not by the United States Supreme Court.

///

Furthermore, the Court has reviewed Petitioner's citations to *Biggs* and notes that it does not compel the result Petitioner urges. In that case, the BPT cited various factors but in reality relied solely on the plaintiff's commitment offense to deny parole. That is not the case here. Furthermore, the *Biggs* court, while issuing a caution about "continued reliance in the future on an unchanging factor . . . .could result in a due process violation," <u>affirmed</u> the BPT's denial of parole as being supported by "some evidence." 334 F.3d at 916–17. Petitioner suggests that because of the offense for which he is incarcerated, the Governor is "repeatedly or interminably denying parole." (Petition at 8:16–21.) However, this is the first instance of Petitioner's case coming before the Governor, and, as discussed above, the Governor's Review gives no indication that Petitioner will be forever precluded from obtaining parole based solely on his commitment offense.

## IV. Conclusion and Order

For these reasons, the Court **OVERRULES** Petitioner's objections and **ADOPTS** the R&R. The Petition is therefore **DENIED WITH PREJUDICE**.

**IT IS SO ORDERED**.

DATED: February 1, 2007

*Larry A. Burns*

**HONORABLE LARRY ALAN BURNS**
United States District Judge